Filed 11/4/20  P. v. Teluci CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD WILLIAM TELUCI,<br><br>    Defendant and Appellant. | A155206<br><br>(San Francisco County<br>Super. Ct. No. SCN179843) |

This appeal follows a jury trial and order committing defendant Richard William Teluci to the custody of the State Department of State Hospitals for treatment and confinement as a sexually violent predator (SVP) pursuant to the Sexually Violent Predators Act (SVPA), Welfare and Institutions Code, section 6600 et seq.[1]  On appeal, Teluci contends we should reverse and discharge him because the 11-year delay in bringing his case to trial violated his due process rights.  While this delay was unacceptably long, Teluci never moved to dismiss the case, and his jury trial began within 10 weeks of his first assertion of his right to a speedy trial.  Based on this record, we discern no violation of Teluci's right.  Teluci also contends his due process

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

right to a fair trial was violated during closing arguments. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

As a result of Teluci's claim that his right to a speedy trial was violated, we provide a detailed overview of this case's procedural history.

I. *Petition to First Probable Cause Hearing: February to June 2007*

Based on sex offense convictions from 1993 and 2000, the San Francisco District Attorney's Office filed a petition for Teluci's civil commitment in February 2007. Teluci concedes that his first probable cause hearing, which was completed in June 2007, occurred "in a relatively expeditious fashion."

After hearing the evidence presented—including testimony and reports prepared by psychologists, Jack Vognsen, Ph.D., and Thomas MacSpeiden, Ph.D.—the court found there was probable cause to believe Teluci was likely to engage in sexually violent predatory criminal behavior if released, and the court ordered he should remain in custody pending trial.

II. *Continuances, New Evaluations, and Teluci's Request for New Evaluators: June 2007 to April 2011*

Teluci's first court-appointed attorney was David Harrison. In January 2008, Assistant District Attorney Ira Barg appeared for the first time, and, in March 2008, Teluci was ordered transported to Coalinga State Hospital. The case was continued multiple times between June 2007 and March 2010. The reason for many of these continuances is not clear, but the record indicates Harrison waived Teluci's appearance at some of the hearings.

In April 2010, Harrison requested a hearing on a motion for new evaluations. The prosecutor joined in the request, and the case was continued to June. The request was based on *In re Ronje* (2009) 179 Cal.App.4th 509, in which a Court of Appeal held the assessment

2

protocol used by SVPA evaluators was invalid, and that the petitioner was entitled to new evaluations and a new probable cause hearing. (*In re Ronje*, at pp. 513–514.)[2]

In June 2010, Harrison told the court the new evaluations by the original evaluators were completed, but he intended to file a motion for new evaluators. The court set a hearing date in July, and stated: "Let's move forward. There are so many of these cases, now, that are being backlogged. [¶] File your motion. We will have a hearing on the motion. And depending upon the ruling, it can either be set for trial or [a] probable cause hearing."

By July 2010, Harrison had not filed his motion, and, at his request, the case was continued to September. In September 2010, the motion for new SVPA evaluators was filed. The prosecutor opposed the motion, and the court denied it. Harrison waived time for the new probable cause hearing. After continuances requested by Harrison, the second probable cause hearing was set for April 2011.

III. *Teluci's Second Probable Cause Hearing: April to November 2011*

The second probable cause hearing began on April 6, 2011. Based on his updated report, the parties examined and cross-examined Dr. Vognsen at hearings in April and June. At the end of the hearing in June, the prosecutor argued Dr. Vognsen's testimony and report were sufficient to establish probable cause, but Harrison argued Teluci was entitled to cross-examine Dr. MacSpeiden on his new report. Dr. MacSpeiden was not available to testify in August. In November 2011, after the parties examined and cross-examined Dr. MacSpeiden, the court found—for a second time—that there

---

[2] In *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 655 (*Reilly*), the California Supreme Court disapproved of *In re Ronje*, holding that a defendant is entitled to a new evaluation and, if necessary, a new probable cause determination, only if the error in the evaluator's report is material.

3

was probable cause to believe Teluci was likely to engage in sexually violent criminal conduct if released. Teluci requested a jury trial.

IV. *Teluci's Second and Third Attorneys: November 2011 to September 2013*

At the next hearing, Harrison informed the court he was not available to take the case to trial. The court appointed Brendan Conroy to represent Teluci. The court continued the matter to December 2011 for trial setting, and to give Conroy an opportunity to "catch up."

Conroy determined there was a need for "additional cross-examination" of Dr. MacSpeiden, and a number of continuances were granted, often at the request of Conroy or both parties. In October 2012, Conroy told the court "there was an order for an updated evaluation of Mr. Teluci's case. We may or may not be asking for a probable cause hearing as a result of that update, so I would ask for December 10th for further setting." The court granted the request. In December 2012, Conroy requested a date for a new probable cause hearing, and the court scheduled it for February 2013. However, in the interim, Conroy was appointed to the bench, and the court granted his request to withdraw.

In January 2013, the court appointed Teluci's third attorney, Susan Kaplan. However, after a number of continuances, in September 2013, she told the court she had "two homicide cases that I have set for trial within the next three months. It's my opinion that Mr. Teluci's interests would be better served with an experienced counsel who doesn't have the conflicts and could devote himself to the Teluci case, and Mr. Fredrich . . . is willing to take the case." Kaplan indicated Teluci was "okay" with the change of counsel, and "[h]e just wants some attention." The court relieved Kaplan as counsel for Teluci and appointed Erwin Fredrich.

4

The prosecutor pointed out that, as a result of *Reilly*, *supra*, 57 Cal.4th at page 655, which—as explained *ante*—disapproved of *In re Ronje, supra*, 179 Cal.App.4th 509, a second probable cause hearing had not been necessary and, consequently, there was no right to further cross-examination of Dr. MacSpeiden. The court indicated it would give Fredrich "a month to take a look at the papers and then we need to get going." The court continued, "unless defense can show . . . that there's some material change in circumstances here, Mr. Teluci has had his probable cause hearing and the matter must eventually be set or should be set for trial." Teluci's new attorney did not seek another probable cause hearing or additional cross-examination of Dr. MacSpeiden.

V.  *Teluci's Fourth Attorney and Attempts to Schedule a Trial Date: October 2013 to June 2017*

In November 2013, the People filed a trial brief, and the prosecutor told the court that both parties were requesting "this matter be assigned to a court for all purposes. We're going to be asking for a trial on a sexually violent predator case. And as the Court is aware, the experts are tied up all over the state. If for some reason this case trails too long, we would have to move to continue it. We would hope a court could be found that can give us a date certain." The court assigned the case to Judge Gerardo Sandoval.

At the parties' first appearance before Judge Sandoval, the court indicated its "primary concern" was to conduct a trial in April 2014. In November 2013, the prosecutor filed proposed jury instructions, a proposed jury questionnaire, motions in limine, and a witness list.

However, what followed was a number of continuances requested by Teluci. In April 2014, the court granted a motion to continue the trial due to the unavailability of "the defense expert witness [who] . . . had a medical emergency." In July 2014, Teluci moved to continue the trial, and it was

5

continued to March 2015. The trial date was later moved to July 2015. In June 2015, the prosecutor opposed a defense motion to continue the trial. Teluci was apparently suffering from medical problems, but the prosecutor argued there were no medical reports and disputed whether Teluci required "a neurological evaluation." The court continued the case to October 2015, but, in October, Fredrich told the court Teluci had "medical issues." The court continued the case first to November 2015 and then to March 2016.

In March 2016, the court indicated that in April it had one or two homicide cases in no-time-waiver status that would take priority. Fredrich expressed concern about a conflict with his planned vacation, and the difficulty of coordinating the schedules of four out-of-town experts. In March 2016, Fredrich moved to continue based on "the uncertainty of obtaining a trial [d]epartment . . . and my preplanned out of state vacation." The court granted the motion and continued the case to May 2016.

In May 2016, the court stated two judges were out on medical leave, and the case was continued to June. On June 22, 2016, the prosecutor told the court that Teluci filed a writ in federal court demanding a speedy trial, and stated, "I believe that's been addressed but it's time to set this for trial." Fredrich stated he was not aware of Teluci's writ, and the court continued the case to October.

At an August 2016 status conference, the court indicated it would do its best to have the case assigned to a judge. However, in October, the case was moved to January 2017, and in January, at the request of the parties, the court set a trial date in May 2017. At a February hearing, the prosecutor requested "a court for all purposes," because "if this case trails even for a week or two, we both end up losing experts."

In March 2017, the prosecutor reiterated that, given the witnesses on both sides, "if we trail even for a week or two, we run into major difficulties. This case has trailed along for years. Both sides are apparently ready now. What we are really asking for, if possible, is an assignment for all purposes." The court was unable to accommodate the request. In April 2017, the court reviewed a proposed order to transport Teluci to San Francisco, and the court put the matter over to May to find a judge. In June 2017, the case was assigned to Judge Edward Torpoco for all purposes.

VI.    *Parties Prepare for Trial, But Court Declares a Mistrial:  June 2017 to January 2018*

In June 2017, the prosecutor filed a trial brief, proposed jury instructions, a proposed jury questionnaire, motions in limine, and a witness list. A week later, Teluci filed trial materials and the prosecutor responded. Later in June, Teluci filed a supplemental motion in limine.

The court indicated it would hear the motions in limine and begin jury selection in December 2017. However, in August, jury selection was pushed to January 2018. In December 2017, the court discussed pretrial matters, including ordering a jury panel, the contents of the jury questionnaire, and motions in limine.

However, in January 2018, after jury selection and before opening statements, Fredrich alerted the court to information that precluded one of the prosecution witnesses, Dr. Douglas Korpi, from testifying. It was discovered that Harrison—Teluci's first attorney—retained Dr. Korpi ten years earlier to informally review Dr. Vognsen's and Dr. MacSpeiden's first evaluations of Teluci. The court held an in camera hearing. After further discussion with the parties, both on and off the record, the court declared a mistrial.

7

VII.   *Teluci's Second Trial and His Civil Commitment*

In March 2018, the prosecutor filed a motion to continue the trial because, over the prosecutor's "strenuous objection," the trial court in another SVPA case scheduled a retrial to begin in May.  Fredrich opposed the motion arguing defense counsel in the other case was not prepared for trial.  Barg indicated the materials were voluminous, and he could not prepare for two trials at once.  The court granted the motion.

On May 14, 2018, for the first time, Fredrich asserted "Mr. Teluci's due-process/speedy-trial rights."  He also stated:  "So at this time we expect . . . this Court will be able to get us a trial department and we won't have to file a motion to dismiss based on speedy-trial/due-process rights."  Barg responded that "the People are ready to proceed."  The court set a trial date of June 26, 2018.  Later in May, the trial date was pushed to July.  In July, the case was assigned to Judge Carol Yaggy for trial.

On July 9, 2018, the prosecutor—once again—filed a trial brief, motions in limine, a jury questionnaire, and proposed jury instructions.  The same day, the court held a hearing and indicated it was attempting "to craft a schedule" that accommodated the availability of both sides' expert witnesses "because they are witnesse[s] who testify all over the state in these different SVP . . . cases."

On July 18, the court addressed various pretrial matters.  Teluci's second jury trial began on July 24, 2018.  The trial ended on August 21, 2018, when the jury unanimously found Teluci to be an SVP, and he was committed to an indeterminate term in a state hospital.  In August 2018, Teluci filed a notice of appeal.

8

On appeal, Teluci claims his due process rights were violated. First, he contends the long delay in bringing his case to trial violated his right to a speedy trial. Second, he contends his due process right to a fair trial was violated during closing arguments. We address these arguments in turn.

I. *No Violation of Teluci's Right to a Timely Trial*

A. *Governing Law*

"The SVPA does not establish a deadline by which a trial on an SVP petition must be held after the trial court finds probable cause to believe the inmate is an SVP." (*People v. Superior Court (Vasquez)* (2018) 27 Cal.App.5th 36, 57 (*Vasquez*).) The proceeding is civil in nature, and the constitutional right to a speedy trial applies in criminal prosecutions. (*Ibid.*) Nevertheless, "[b]ecause civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections." (*People v. Otto* (2001) 26 Cal.4th 200, 209.) An alleged SVP defendant has a due process right to a timely trial.[3] (*People v. Litmon* (2008) 162 Cal.App.4th 383, 399 (*Litmon*).)

To define the contours of this right, courts apply the tests articulated in *Barker v. Wingo* (1972) 407 U.S. 514 (*Barker*) and *Mathews v. Eldridge* (1976) 424 U.S. 319 (*Mathews*). (See, e.g., *Litmon, supra,* 162 Cal.App.4th at pp. 396–399.) The *Barker* test requires a balancing of four factors, including the "[l]ength of delay, the reason for the delay, the defendant's assertion of

---

[3] Because SVPA cases are civil, not criminal, it is more accurate to refer to Teluci's due process right to a timely trial. Nevertheless, courts in SVPA cases often rely on discussions of the right from criminal cases. As a result, when discussing those cases or the parties' contentions based on them, we often use the term "speedy trial," rather than "timely trial." (See *Vasquez, supra,* 27 Cal.App.5th at p. 60, fn. 16 [discussing use of both terms].)

his right, and prejudice to the defendant." (*Barker*, at p. 530.) *Mathews* described the right of due process as the opportunity to be heard at a meaningful time, in a meaningful manner. (*Mathews*, at p. 333.) Under the *Mathews* test, courts balance: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of that interest; and (3) the governmental interest. (*Id.* at p. 335.)

B. *Forfeiture Analysis*

Preliminarily, we consider the Attorney General's argument that Teluci waived or forfeited his right to challenge the delay in bringing his SVPA case to trial by failing to file a motion to dismiss in the trial court.

This argument has some merit: in almost every SVPA case cited by Teluci, the defendant moved to dismiss the case. (*Vasquez, supra*, 27 Cal.App.5th at p. 41 [reviewing order granting defendant's motion to dismiss]; *Litmon, supra*, 162 Cal.App.4th at p. 390 [reviewing orders denying defendant's motions to dismiss consolidated petitions]; *People v. Landau* (2013) 214 Cal.App.4th 1, 10–11, 36 [reviewing denial of motions to dismiss]; *People v. Sanders* (2012) 203 Cal.App.4th 839, 844 [defendant filed motion to dismiss].) Furthermore, Teluci's first assertion of his right to a speedy trial occurred on May 14, 2018, over 11 years after the SVP petition was filed.[4]

Indeed, it is somewhat unfair to consider Teluci's speedy trial claim on appeal because "the prosecution never had a chance to justify the delay" in the trial court. (See *People v. Lewis* (2008) 43 Cal.4th 415, 445; *People v.*

_____

[4] Teluci claims he "formally demanded a speedy trial" about two years earlier. But, on June 22, 2016, it was the prosecutor who stated that Teluci filed a writ in federal court, and Teluci's counsel was not aware of it. There is no evidence in the record that Teluci did so. (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364 ["if it is not in the record, it did not happen"].)

10

*Landau, supra*, 214 Cal.App.4th at pp. 34–35 [" ' " "The rule that contentions not raised in the trial court will not be considered on appeal is founded on considerations of fairness to the court and opposing party.' " ' "].) Nevertheless, in *People v. Williams* (2013) 58 Cal.4th 197 (*Williams*), our high court considered a defendant's speedy trial claim even though he did not move to dismiss the case in the trial court. (*Id.* at pp. 215, 248.) And in *Barker, supra*, 407 U.S. at page 528, the United States Supreme Court determined a defendant's failure to demand a speedy trial was not dispositive. Of course, in each of those cases, the defendant repeatedly objected to continuances. (See *Williams*, at pp. 215–218, 224; see also *Barker*, at pp. 517–518.)

Here, the defense never objected. In *People v. Blanchard* (1996) 42 Cal.App.4th 1842, 1849, the court wrote: "The right to a speedy trial cannot be asserted for the first time on appeal or by petition for writ of habeas corpus." This holding has never been disapproved. Nonetheless, in an abundance of caution, we consider Teluci's argument.

C.     *The Barker Analysis*

Applying the *Barker* factors, Teluci fails to establish a violation of his right to a timely trial. We address each of the four factors.

1.     *The Length of the Delay*

We agree with Teluci that the 11-year delay between the filing of the petition and the commencement of his second trial was "extraordinary," "presumptively prejudicial," and this factor weighs in his favor. (*Barker, supra*, 407 U.S. at pp. 530, 533–534.) However, the other factors, including the reasons for the delay, all weigh against him. (*Id.* at p. 530.)

11

## 2.    *The Reasons for the Delay*

In the *Barker* analysis, the reason for the delay is the " 'flag all litigants seek to capture.' " (*Williams, supra*, 58 Cal.4th at p. 239.)  In analyzing this factor, courts consider "the conduct of the prosecution, the defense, and the trial court." (*Ibid.*)

Teluci argues the delay was caused by "a complete breakdown in the SVP defense system as applied to him."  Teluci points out that while Harrison was his attorney, the case "was set for trial on multiple occasions and continued for reasons that do not appear in the record, primarily because the reporter's transcripts no longer exist."  Teluci complains that, instead of moving his case forward, Conroy and Kaplan "inexplicably tilted at the windmill of a third unauthorized, unnecessary, and pointless probable cause hearing."  Teluci implies that Harrison and Kaplan were too busy to devote time to his case, and he argues Fredrich should have filed a motion to dismiss.

These arguments do not establish that the state must be held responsible for the delays.  In *Williams*, *supra*, 58 Cal.4th at pages 244 to 245, our high court considered whether the failure of eight attorneys over a seven-year period to bring a criminal case to trial was "chargeable to the state or to defendant for purposes of speedy trial analysis."  While the " 'revolving door' " of appointed attorneys who failed to move the defendant's case forward was problematic, the defendant failed to establish the kind of "systemic breakdown" that should be weighed against the state.  (*Id.* at p. 248.)  As explained by the United States Supreme Court, "[a] contrary conclusion could encourage appointed counsel to delay proceedings by seeking unreasonable continuances, hoping thereby to obtain a dismissal of the

12

indictment on speedy-trial grounds." (*Vermont v. Brillon* (2009) 556 U.S. 81, 93.)

In *Williams*, our high court determined that "[b]ecause defendant did not file a motion to dismiss on speedy trial grounds in the trial court, the underlying cause of the delay in this case was never litigated, the various statements by defendant and his attorneys were never examined in an adversarial proceeding, and the trial court made no findings that might inform the issue before us." (*Williams*, *supra*, 58 Cal.4th at p. 248.) The record did not contain "facts about the public defender *system* that would support a finding of a *systemic* breakdown." (*Id.* at p. 249.) As a result, the California Supreme Court was required "to charge to [the] defendant the delay in this case resulting from defense counsel's lack of progress." (*Ibid.*)

By contrast, in *Vasquez*, there was a motion to dismiss the SVP petition on the grounds of excessive delay, two of the defendant's former public defenders testified at the hearing, and, in granting the motion, the trial court issued a detailed 10-page ruling, including factual findings. (*Vasquez*, *supra*, 27 Cal.App.5th at pp. 71–73.) One of the public defenders testified regarding "dramatic budget cuts in the public defender's office," and her transfer "out of the SVP unit on the eve of trial." (*Id.* at p. 73.) Based on the "extensive record" of systemic problems, the Court of Appeal determined the final two- to three-year delay in bringing the defendant to trial was the state's responsibility, not the defendant's. (*Id.* at pp. 73–74; see also *People v. DeCasas* (2020) 54 Cal.App.5th 785, 810–811 [affirming dismissal where substantial evidence supported trial court's finding that delays were attributable to the state].)

In *In re Butler* (2020) 55 Cal.App.5th 614 (*Butler*), our colleagues in Division One of this Court recently affirmed the grant of a petition for a writ

of habeas corpus in an SVPA case. After an evidentiary hearing, the habeas court issued a detailed 70-page decision. (*Butler,* at p. 635.) The record indicated the defendant expressed a sincere desire from early on for a speedy trial, which was ignored by the trial court and his public defenders, and the bulk of the delay was attributable to the state because the trial court, among other things, failed to require counsel to provide a good cause basis for any continuance, and there was no evidence the trial court ever set a second probable cause hearing. (*Id.* at pp. 635–637.)

Here, Teluci's case is more like *Williams*, and less like *Vasquez* or *Butler*. Teluci argues, for example, that Fredrich's failure to file a motion to dismiss was "yet another manifestation of the complete breakdown of the San Francisco SVP defense system," but this argument gets it backwards. Instead, Teluci's failure to file a motion to dismiss, or petition for a writ of habeas corpus, means the record is devoid of facts that would support a finding of a systemic breakdown in the court-appointed defender system (*Williams*, *supra*, 58 Cal.4th at pp. 248–249), or " 'a systemic breakdown with the management of this case.' " (*Butler*, *supra*, 55 Cal.App.5th at p. 662.) Teluci claims, for example, that his first attorney, Harrison, was "too busy" to bring Teluci's case to trial, but the record simply indicates he was "not available." Teluci can only speculate that he must have been "too busy." Accordingly, even assuming that Teluci's court-appointed attorneys failed at times to diligently move his case forward, based on Teluci's failure to create a record below, most of the delay is attributable to Teluci, not to the state.

Teluci argues the trial court and the prosecutor were responsible for delays. But Teluci's claims are rife with speculation, and he often fails to provide citations to the record. For example, Teluci claims the case could have gone to trial much faster if it had been trailed, and that the prosecutor

14

"was happy to have cases delayed so long as he was not blamed for the delays." We disregard speculative claims of this nature. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [appellant must demonstrate error "on the basis of the record presented to the appellate court"].)

Based on our review of the record, the prosecutor diligently sought to move the case forward. For example, after the California Supreme Court's 2013 decision in *Reilly*, *supra*, 57 Cal.4th at page 655, Barg argued there was no longer a need for another probable cause hearing, and he filed a trial brief. Barg pressed, on a number of occasions, for the court to assign a judge for all purposes. When the case was assigned to Judge Sandoval, the prosecutor filed trial materials including proposed jury instructions and a jury questionnaire. Thereafter, Teluci sought a series of continuances, at least one of which the prosecutor opposed. Similarly, when the case was assigned to Judge Torpoco, the prosecutor filed trial materials and worked to move the case forward, but Teluci's first trial ended in a mistrial. The prosecutor sought a continuance in March 2018 based on a conflict with his trial schedule for another SVP case, but our review of the record indicates that, overall, only a small handful of delays can be attributed to the prosecutor.

Considering the role of the trial court, court congestion certainly caused some of the delays.[5] For example, in March 2016, the court indicated it had one or two homicide cases in no-time-waiver status that took priority, and, in May 2016, the court stated two judges were out on medical leave. It is clear, therefore, that court congestion had some impact, but "neutral reason[s] such

---

[5] Without citing to the record, Teluci claims court congestion delayed his "second probable cause hearing for six or seven months." But the record indicates the prosecutor was prepared for the court to issue a second probable cause ruling based on Dr. Vognsen's report and testimony alone, and it was Harrison who sought additional testimony from Dr. MacSpeiden.

as . . . overcrowded courts should be weighted less heavily." (*Barker, supra*, 407 U.S. at p. 531.)

In addition, the record indicates that some delays were caused by factors beyond the control of the defense, the prosecution, or the courts, such as Conroy's appointment to the bench, the unsettled state of the law prior to the California Supreme Court's 2013 decision in *Reilly*, and the mistrial caused by the late discovery that an expert witness for the prosecution consulted with defense counsel years earlier. Other than these delays, we follow binding Supreme Court precedent, and conclude that most of the remaining delay must be charged to Teluci. (*Williams, supra*, 58 Cal.4th at p. 249.)

### 3. *Defendant's Assertion of the Right*

As already discussed, Teluci did not assert his right to a speedy trial until May 2018, over 11 years after the SVP petition was filed. In considering Teluci's due process challenge, his failure to assert the right earlier hurts his claim that he was denied a speedy trial. (*Barker, supra*, 407 U.S. at p. 531; *Litmon, supra*, 162 Cal.App.4th at p. 405 ["a belated assertion of a procedural due process right to a speedy SVP trial is entitled to less weight than a prompt assertion of such right"].)

Indeed, once Teluci asserted his right in May 2018, his second jury trial commenced within 10 weeks. In *People v. Landau, supra*, 214 Cal.App.4th at pages 43 to 44, the Court of Appeal determined a "98-day delay in providing appellant a trial after [his] second mistrial did not violate due process." Similarly here, the fact that Teluci's second trial occurred soon after the first assertion of his right to a speedy trial weighs against his claim.

16

#### 4. *Prejudice to Defendant*

As explained in *Barker*, the most serious prejudice resulting from delay is "the possibility that the defense will be impaired. . . . . [T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system." (*Barker*, *supra*, 407 U.S. at p. 532.) Here, in his opening brief, Teluci devotes one paragraph to explaining the prejudice he suffered. Other than a reference to the presumptive prejudice resulting from the 11-year delay, Teluci fails to make "any particularized showing of evidentiary prejudice." (*Williams*, *supra*, 58 Cal.4th at p. 236.)

We recognize that "a defendant's 'extended confinement without any determination that he [is] an SVP' results in an irretrievable loss of liberty, 'regardless of the outcome of trial.' " (*Vasquez*, *supra*, 27 Cal.App.5th at p. 64.) Nevertheless, in *Williams*, the California Supreme Court determined the defendant could not "benefit from a presumption of prejudice because the record does not show that the state was responsible for the delay." (*Williams*, *supra*, 58 Cal.4th at p. 252.) Similarly here, we attribute much of the delay to Teluci, and, as a result, he cannot benefit from the presumption of prejudice.

In addition, many of the typical concerns triggered by delayed criminal prosecutions—faded memories, lost evidence, and missing or deceased witnesses—are not as pressing in SVP trials because the issue at trial is whether the defendant currently suffers from a mental disorder that creates a danger to society. (§ 6600, subds. (a)(1), (3); *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1162 [SVPA requires trier of fact to find defendant "is dangerous at the time of commitment. The statutory criteria are expressed in the present tense."].) In any event, Teluci does not allege any of these typical concerns.

Balancing the *Barker* factors, although the first factor—the length of the delay—favors Teluci, the other factors—the reasons for the delay, defendant's assertion of his right, and prejudice to defendant—all weigh against him. Teluci's due process right to a timely trial was not violated.

### D. *The Mathews Analysis*

Applying the *Mathews* test leads to the same result. As to the first factor under this test, Teluci's confinement for over 11 years awaiting trial " ' "constitutes a significant deprivation of liberty that requires due process protection." ' " (*Litmon, supra,* 162 Cal.App.4th at p. 400.)

Second, we recognize that " 'the risk of an erroneous deprivation' " of this private interest in SVPA cases is "considerable" because the "loss of liberty" is "irretrievable." (*Litmon, supra,* 162 Cal.App.4th at p. 400.) But, unlike in *Litmon*, at page 402, Teluci's mistrial was not the result of "a hung jury," which indicated "that appellant might not be determined to be an SVP at trial." In addition, the psychologists who evaluated Teluci in 2006 never wavered in their conclusion that Teluci suffered from pedophilia, a diagnosed mental disorder, even though they updated their reports a number of times.

Under the *Mathews* test, these factors must be weighed against "the state's 'compelling protective interest in the confinement and treatment of persons who have already been convicted of violent sex offenses, and who, as the result of current mental disorders . . . represent a *substantial danger* of committing similar new crimes.' " (*Litmon, supra,* 162 Cal.App.4th at pp. 400–401.) Balancing the *Mathews* factors, we discern no due process violation.

II.     *No Violation of Teluci's Right to a Fair Trial During Closing Arguments*

Next, we consider Teluci's argument that his right to a fair trial was violated during closing arguments.  We discern no abuse of discretion and the error, if any, was harmless.

A.     *Governing Law*

An SVP is "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)  Before a petition for commitment can be requested, two evaluators must concur that "the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody."  (§ 6601, subd. (d).)

In *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 921 (*Ghilotti*), the California Supreme Court considered the standard that evaluators must apply and determined "the word 'likely,' when used in this context, must be given a meaning consistent with the statute's clear overall purpose.  That purpose is to protect the public from that limited group of persons who were previously convicted and imprisoned for violent sex offenses, and whose terms of incarceration have ended, but whose current mental disorders so impair their ability to control their violent sexual impulses that they *do in fact* present a high risk of reoffense if they are not treated in a confined setting."

Our high court further explained, "the phrase '*likely* to engage in acts of sexual violence' . . . connotes much more than the mere *possibility* that the person will reoffend as a result of a predisposing mental disorder," but it "does not require a precise determination that the chance of reoffense is

19

*better than even.* Instead, an evaluator . . . must conclude . . . the person presents a *substantial danger*, that is, a *serious and well-founded risk*, that he or she will commit such crimes if free in the community." (*Ghilotti, supra,* 27 Cal.4th at p. 922.) As recognized by *Ghilotti,* "the state has a compelling protective interest in the confinement and treatment of persons who have already been convicted of violent sex offenses, and who, as the result of current mental disorders . . . represent a *substantial danger* of committing similar new crimes [citations], even if that risk cannot be assessed at greater than 50 percent." (*Ghilotti,* at p. 924.)

In *People v. Roberge* (2003) 29 Cal.4th 979, 987, the California Supreme Court held that "the phrase 'likely [to] engage in sexually violent behavior' in section 6600, subdivision (a), should be given the same meaning as the phrase 'likely to engage in acts of sexual violence without appropriate treatment and custody' in section 6601, subdivision (d), the provision at issue in *Ghilotti.*" Accordingly, "under section 6600, subdivision (a), . . . a person is 'likely [to] engage in sexually violent criminal behavior' if at trial the person is found to present a *substantial danger*, that is, a *serious and well-founded risk*, of committing such crimes if released from custody." (*Roberge,* at p. 988.)

B.    *The Jury Instructions and Closing Arguments*

As relevant here, the trial court instructed the jury based on CALCRIM No. 3454, as follows: "A person is likely to engage in sexually violent predatory criminal behavior if there is a substantial danger; that is, a serious and well-founded risk that the person will engage in such conduct if released into the community. [¶] The likelihood that the person will engage in such conduct does not have to be greater than 50 percent."

20

During closing arguments, the prosecutor argued, "there's no specific number here associated with whether he represents a serious and well-founded risk. [¶] The jury instruction tells you, it doesn't have to be greater than 50 percent. [¶] That doesn't mean it has to be 49 percent, 32 percent, eight percent. It has to be what you determine to be [a] serious and well-founded risk." The prosecutor suggested the jurors would not buy a computer model that failed 10 or 15 percent of the time, and, he added, "In this particular case, the numbers don't matter." But later, when defense counsel argued that "a serious and well-founded risk" of reoffending "would have to be pretty close to 50 percent," the court sustained an objection to the argument.

C. *No Abuse of Discretion and the Error, if any, Was Harmless*

Teluci contends there was "an inherent unfairness in the different ways" the prosecutor and defense counsel were permitted to argue the meaning of "a serious and well-founded risk" of reoffending. By sustaining the objection to defense counsel's argument, Teluci contends the jurors "were not permitted to decide that a risk of reoffending that approached 50 [percent] would be necessary to qualify as 'likely' but they . . . could . . . decide that a percentage as low as 10 or 15 [percent] qualified as 'likely.' "

We are not persuaded. First, the trial court properly sustained the objection to defense counsel's argument because the People did not have to prove that Teluci's risk of reoffending "would have to be pretty close to 50 percent." Our high court explained the likelihood of reoffending did not have to be greater than 50 percent, and the court did not state or imply it had to be close to that figure; instead, the prosecutor had to prove there was a serious and well-founded risk that Teluci would reoffend. (*Ghilotti, supra*, 27 Cal.4th at p. 924; *People v. Roberge, supra*, 29 Cal.4th at p. 988.) Because Teluci's

21

argument was misleading, there was no abuse of discretion in the trial court's order sustaining an objection to it. (*People v. Benavides* (2005) 35 Cal.4th 69, 110 [trial court restriction on argument to the jury reviewed for abuse of discretion].)

Second, assuming without deciding that there was an error, it was harmless. Later in his argument, defense counsel expressly challenged the prosecutor's "analogy of a computer that had a failure rate." Defense counsel argued a prosecution expert opined that Teluci had a 25.7 percent risk of reoffending, and defense counsel argued he would not "bet the farm" on a roulette game in which there was a 25 percent chance of winning. Defense counsel claimed the prosecutor was relying on an evaluation that was "half of 50 percent," but, according to Teluci's expert, Teluci's risk of reoffending was "11 to 13 percent."

Defense counsel, therefore, was permitted to make the argument he was earlier prevented from making. Based on his opportunity to do so, it is clear beyond a reasonable doubt that the trial court's sustaining of the objection to defense counsel's earlier argument "did not contribute to the verdict obtained." (*Chapman v. California* (1967) 386 U.S. 18, 24.) On appeal, Teluci does not challenge the ample evidence supporting the jury's unanimous verdict that he is an SVP, including his May 1993 conviction for assault with intent to commit a lewd act upon a child (Pen. Code, § 220), and his July 2000 plea of guilty to committing lewd acts with a child under 14 (*id.*, § 288, subd. (a)). Teluci does not challenge the evidence of uncharged misconduct involving other young girls, or the opinions of the prosecution witnesses that Teluci suffers from pedophilia, a diagnosed mental disorder. Based on this record, even assuming the trial court erred in sustaining an

22

objection during closing arguments, it was harmless beyond a reasonable doubt.

For similar reasons, we reject Teluci's claim that he received ineffective assistance of counsel.  Given that Teluci was later permitted to make his argument, he cannot demonstrate prejudice, or, in other words, he cannot show "a reasonable probability that . . . the result of the proceeding would have been different."  (*Strickland v. Washington* (1984) 466 U.S. 668, 694.)

DISPOSITION

We affirm.

23

_____
Reardon, J.*

WE CONCUR:


_____
Simons, Acting P.J.


_____
Burns, J.


A155206


---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.